LEE HOLEN (AK SBN 7810071)
lhlo@alaska.net
LEE HOLEN LAW OFFICE
P.O. Box 92330
Anchorage, AK 99509
Telephone: (907) 278-0298, Facsimile: (907) 278-0247

KEVIN SHARP (TN SBN 016287, *Pro Hac Vice* forthcoming)
ksharp@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
611 Commerce St., Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7001, Facsimile: (615) 434-7020

ED CHAPIN (CA SBN 53287, *Pro Hac Vice* forthcoming)
Echapin2@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4253, Facsimile: (619) 577-4250

DANIELLE FUSCHETTI (CA SBN 294064, *Pro Hac Vice* forthcoming)
dfuschetti@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020, Facsimile: (415) 795-2021

*Attorneys for Plaintiffs and the Classes*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| TERRY MEAD AND SEAN KNUTE ADCOCK, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>          Plaintiffs<br><br>     v.<br><br>EQUIFAX INC. AND EQUIFAX INFORMATION SERVICES, LLC.,<br>         Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Terry Mead and Sean Knude Adcock ("Plaintiffs" or "Class Representatives"), on behalf of themselves and the Classes defined below, allege the following against Equifax Inc. and Equifax Information Services LLC (collectively "Defendants," "Equifax," or the "Company"), based on personal knowledge as to Plaintiffs' conduct and on information and belief as to the acts of others.

## I.  **INTRODUCTION**

1.     Defendants Equifax, Inc. and Equifax Information Services, LLC operate one of the three largest consumer credit reporting agencies in the United States.  Plaintiffs have been consumers of Defendants' services and entrusted Defendants with their personal information for many years.  They bring this action on a class basis alleging violations of the Fair Credit Reporting Act, the Alaska Personal Information Protection Act, negligence, negligence per se, contract claims, unjust enrichment, and bailment, and seeking declaratory relief and redress for affected Equifax consumers.

2.     As Plaintiffs and the Class entrusted Defendants with their sensitive personal information, Defendants owed them a duty of care to take adequate measures to protect the information entrusted to them, to detect and stop data breaches, and to inform Plaintiffs and the Class of data breaches that could expose them to harm.  Equifax failed to do so.

3.     Defendants acknowledge that, between May 2017 and July 2017, they were the subject of a data breach in which unauthorized individuals accessed Equifax's database and the names, Social Security numbers, addresses, and other Personal Identifying Information ("PII") stored therein (hereinafter the "Data Breach").  According to Equifax, the Data Breach affected as many as 143 million people.  Defendants admit that they discovered the unauthorized access

CLASS ACTION COMPLAINT

on July 29, 2017, but failed to alert Plaintiffs and the Class to the fact of the breach until September 7, 2017.

4.      The Data Breach was the inevitable result of Defendants' inadequate approach to data security and the protection of the PII that they collected during the course of their business. Defendants knew and should have known of the inadequacy of their own data security. They have experienced similar such breaches of PII on smaller scales in the past, including in 2013, 2016, and even as recently as January 2017. Over the years, Defendants have jeopardized the PII and, as a result, financial information of hundreds of thousands of Americans.

5.      Despite this long history of breaches, Defendants have failed to prevent the Data Breach that has exposed the personal information of over 100 million Americans. The damage done to these individuals may follow them for the rest of their lives, as they will have to monitor closely their financial accounts to detect any fraudulent activity and incur out-of-pocket expenses for years to protect themselves from, and to combat, identity theft now and in the future.

6.      Equifax knew and should have known the risks associated with inadequate security, and with delayed reporting of the breach. The potential for harm caused by insufficient safeguarding of PII is profound. With data such as that leaked in the Data Breach, identity thieves can cause irreparable and long-lasting damage to individuals, from filing for loans and opening fraudulent bank accounts to selling valuable PII to the highest bidder.

7.      In the case of Defendants' Data Breach, the potential repercussions for consumers are particularly egregious. Privacy researchers and fraud analysts have called this attack "as bad as it gets." "On a scale of 1 to 10 in terms of risk to consumers," it is a 10.[1]

---

[1] https://www.nytimes.com/2017/09/07/business/equifax-cyberattack.html

GLASS ACTION COMPLAINT

8.    Defendants failed to inform millions of consumers of the Data Breach until September 7, 2017, over a month after Defendants first discovered it on July 29. While Defendants took no steps in that time to inform the public in the interim, Defendants did not hesitate to protect themselves; at least three Equifax senior executives, including CFO John Gamble, upon information and belief, sold shares worth $1.8 million in the days following the Data Breach.[2]

9.    To provide relief to the millions of people whose PII has been compromised by the Data Breach, Plaintiffs bring this action on behalf of themselves and all others similarly situated. They seek to recover actual and statutory damages, equitable relief, restitution, reimbursement of out-of-pocket losses, other compensatory damages, credit monitoring services with accompanying identity theft insurance, and injunctive relief including an order requiring Equifax to improve their data security and bring to an end their long history of breaches at the cost of consumers.

## II.    THE PARTIES

### A.    PLAINTIFF TERRY MEAD

10.    Plaintiff Terry Mead is an individual consumer who has resided in Alaska since 2001. Plaintiff Mead engaged, or authorized the engagement of, Equifax at various times over the years, including five years ago in the process of securing a loan to purchase her house and again as recently as 2015. As a result, Equifax has possessed her financial history, including his social security number, birth date, personal addresses, and other sensitive personally identifying information. Plaintiff Mead was a victim of the breach. Since the breach, she has spent time

---

[2] https://www.bloomberg.com/news/articles/2017-09-07/three-equifax-executives-sold-stock-before-revealing-cyber-hack

4

monitoring and attempting to protect her credit and accounts from the improper use of her PII obtained by unauthorized third parties as a result of the Data Breach.

## B.  PLAINTIFF SEAN KNUTE ADCOCK

11.  Plaintiff Sean Knute Adcock is an individual consumer who has resided in Alaska since 1987.  He is currently deployed with the U.S. Military in Arlington, Virginia.  Plaintiff Adcock engaged, or authorized the engagement of, Equifax at various times over the years, and has done so regularly since 2000 in obtaining loans to purchase houses and cars and in the course of renewing his security clearance as a member of the military.  As a result, Equifax has possessed his financial history, including his social security number, birthdate, personal addresses, and other sensitive personally identifying information.  Plaintiff Adcock was a victim of the breach.  Since the breach, he has spent time monitoring and attempting to protect his credit and accounts from the improper use of his PII obtained by unauthorized third parties as a result of the Data Breach.

## C.  DEFENDANT EQUIFAX, INC.

12.  Defendant Equifax Inc. is a multi-billion-dollar corporation incorporated in Georgia.  It provides credit information services to millions of businesses, governmental units, and consumers across the globe.  Equifax operates through various subsidiaries and agents, each of which entities acted as agents of Equifax, or in the alternative, in concert with Equifax.

## D.  DEFENDANT EQUIFAX INFORMATION SERVICES, LLC

13.  Defendant Equifax Information Services, LLC. is a Georgia corporation with its principal place of business located in Atlanta, GA.  According to Bloomberg, Equifax Information Services LLC, formerly known as Equifax Credit Information Services Inc., is a

subsidiary of Equifax, Inc. responsible for collecting and reporting consumer information to financial institutions.[3]

## III.    JURISDICTION AND VENUE

14.    This Court has jurisdiction under 28 U.S.C. § 1332 because there are over 100 Class members, the amount in controversy exceeds $5 million exclusive of interest and costs, and this is a class action in which many members of the proposed classes, on the one hand, and Defendants, on the other, are citizens of different states.

15.    The District of Alaska has personal jurisdiction over Defendants because Defendants do business in Alaska and in this district; Defendants advertise in a variety of media throughout the United States, including Alaska; and many of the acts complained of and giving rise to the claims alleged herein occurred in the District of Alaska. Defendants intentionally avail themselves of the markets within this state, rendering the exercise of jurisdiction by this Court just and proper.

16.    Venue is proper pursuant to 28 U.S.C. Section 1391 because Defendants conduct substantial business in Alaska, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and a substantial part of property that is the subject of the action is situated in this district.

## IV.    FACTUAL ALLEGATIONS

17.    Defendants have collected and stored personal and credit information from Class members, including Plaintiffs.

18.    Equifax owed a duty to Plaintiffs and the Classes, who entrusted Defendants with their private information, to use reasonable care to protect their PII from unauthorized access by

---

[3] https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=26580113

CLASS ACTION COMPLAINT

third parties and to detect and stop data breaches, to comply with laws implemented to preserve the privacy of this information, and to notify them promptly if their information was disclosed to an unauthorized third party.

19. Defendants knew or should have known that their failure to meet this duty would cause substantial harm to Plaintiffs and the Classes, including serious risks of credit harm and identity theft for years to come.

20. As Defendants were well-aware, or reasonably should have been aware, the PII collected, maintained and stored in their systems is highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties, such as identity theft and fraud. It is well known and the subject of many media reports that PII is highly coveted and a frequent target of hackers. Prior to May 2017, Defendants had experienced at least three major cybersecurity incidents in which consumers' personal information was compromised and accessed by unauthorized third parties.

21. Despite the frequent public announcements of data breaches of corporate entities, including Equifax itself, Equifax maintained an insufficient and inadequate system to protect the PII of Plaintiffs and Class members, in breach of their duties to Plaintiffs and the Classes. Given the Company's history of cyber attacks and their reputation as an industry leader in data breach security, Equifax could have and should have invested more money and resources into ensuring the security of their data.

22. Because Equifax negligently failed to maintain adequate safeguards, unauthorized third parties managed to exploit a weakness in Equifax's US website application to gain access to sensitive data for roughly two months, beginning in mid-May 2017. The information accessed included names, Social Security numbers, birth dates, addresses, and, in some cases, driver's

license numbers. In addition, credit card numbers for approximately 209,000 U.S. consumers, and certain dispute documents with personal identifying information for approximately 182,000 U.S. consumers, were accessed.

23.     Defendants were, or reasonably should have been, aware of the vulnerability in their system as early as March 2017. In or about March 2017, Equifax discovered a vulnerability in their U.S. website: Apache Struts CVE-2017-5638. Despite knowing that this system flaw jeopardized the PII of millions of consumers, they failed to implement an effective patch for at least 9 weeks, and failed to check this known vulnerability regularly to ensure that consumers' information was secure throughout the period of the Data Breach.

24.     The Equifax Data Breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiffs' and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Equifax's failure to establish and implement appropriate safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

25.     Equifax delayed informing Plaintiffs, the Classes, and the public of the Data Breach. On September 7, 2017, Equifax announced to the public that the they had discovered "unauthorized access" to company data, which jeopardized sensitive information for millions of their consumers.

26.     At all relevant times, Equifax knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences if their data security system was breached, including, specifically, the significant costs that would be imposed on individuals as a result of a breach.

27.     As a direct, proximate, and foreseeable result of Equifax's failure to meet their duty of care, including by failing to maintain adequate security measures and failing to provide adequate notice of the Data Breach, Plaintiffs and the Classes have suffered and will continue to suffer substantial harm, including inconvenience, distress, injury to their rights to the privacy of their information, increased risk of fraud, identity theft, and financial harm, the costs of monitoring their credit to detect incidences of this, and other losses consistent with the access of their PII by unauthorized sources.

28.     Armed with the stolen information, unauthorized third parties now possess keys that unlock consumers' medical histories, bank accounts, employee accounts, and more. Abuse of sensitive credit and personal information can result in considerable harm to victims of security breaches. Criminals can take out loans, mortgage property, open financial accounts and credit cards in a victim's name, obtain government benefits, file fraudulent tax returns, obtain medical services, and provide false information to police during an arrest, all under the victim's name. Furthermore, this valuable information can also be sold to others with similar nefarious intentions.

29.     As a direct and proximate result of Equifax's wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports.

This time has been lost forever and cannot be recaptured. In all manners of life in this country, time has constantly been recognized as compensable; for many consumers it is the way they are compensated, and even if retired from the work force, consumers should be free of having to deal with the consequences of a credit reporting agency's slippage, as is the case here.

30.     A breach of this scale requires Plaintiffs and Class members to incur the burden of scrupulously monitoring their financial accounts and credit histories to protect themselves against identity theft and other fraud and spending time and incurring out-of-pocket expenses to protect against such theft. This includes obtaining credit reports, enrolling in credit monitoring services, freezing lines of credit, and more. Where identity theft is detected, Plaintiffs and Class members will incur the burden of correcting their financial records and attempting to correct fraud on their accounts, to the extent that that is even possible. Plaintiffs and Class members will likely spend considerable effort and money for the rest of their lives on monitoring and responding to the repercussions of this cyber attack.

31.     Equifax's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.   theft of their personal and financial information;

    b.   unauthorized charges on their debit and credit card accounts;

    c.   the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class members' information on the black market;

d.  the untimely and inadequate notification of the Data Breach;

e.  the improper disclosure of their PII;

f.  loss of privacy;

g.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

h.  ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

i.  ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

j.  loss of use of and access to their account funds, and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations; and,

k.  the loss of productivity and value of their time spent to attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

CLASS ACTION COMPLAINT
Case 3:17-cv-00208-SWS Document 1 Filed 09/29/17 Page 11 of 37

32.     Because Defendants demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiffs and members of the Classes have an undeniable interest in ensuring that their PII, which remains in Equifax's possession, is secure, remains secure, is properly and promptly destroyed and is not subject to further theft.

## V.     CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 seeking injunctive and monetary relief for Equifax's systemic failure to safeguard personal information of Plaintiffs and Class members.

### A.     CLASS DEFINITIONS

34.     Plaintiffs seek relief in their individual capacities and as representatives of all others who are similarly situated.

35.     The "Nationwide Class" is defined as all persons residing in the United States whose personal data Equifax collected and stored and whose personal information was placed at risk and/or disclosed in the Data Breach affecting Equifax from May to July 2017.

36.     The "Alaska Class" is defined as all persons residing in Alaska whose personal data Equifax collected and stored and whose personal information was placed at risk and/or disclosed in the Data Breach affecting Equifax from May to July 2017.

37.     Excluded from either class are all attorneys for the class, officers, and members of Equifax, including officers and members of any entity with an ownership interest in Equifax, any judge who sits on this case, and all jurors and alternate jurors who sit on this case.

38.     Except where otherwise noted, "Class members" shall refer to members of the Nationwide Class and each of the Alaska Class collectively.

39. Plaintiffs hereby reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

## B. REQUIREMENTS OF RULE 23(a) AND RULE 23(b)(2) and (b)(3)

### i. Numerosity and Impracticability of Joinder

40. The proposed Classes are so numerous that joinder of all members is impracticable.

41. Upon information and belief, there are more than 143 million members of the proposed Nationwide Class, and hundreds of thousands of members in the Alaska Class.

42. The Class members are readily ascertainable. Equifax has access to information about the Data Breach, the time period of the Data Breach, and which individuals were affected. Using this information, the members of the Classes can be identified and their contact information ascertained for purposes of providing notice.

### ii. Common Questions of Law and Fact

43. Every Class member suffered injuries as alleged in this complaint as a result of Defendants' misconduct. The prosecution of Plaintiffs' claims will require the adjudication of numerous questions of law and fact common to the Classes. The common questions of law and fact predominate over any questions affecting only individual Class members. The common questions include:

  a. Whether Defendants engaged in the wrongful conduct alleged herein;

  b. Whether Defendants owed a duty to Plaintiffs and Class members to adequately protect their personal information;

  c. Whether Defendants breached their duties to protect the personal information of Plaintiffs and Class members;

d. Whether Defendants knew or should have known that their data security systems and processes were unreasonably vulnerable to attack;

e. Whether Plaintiffs and Class members suffered legally cognizable damages as a result of Defendants' conduct, including increased risk of identity theft and loss of value of personal information; and

f. Whether Plaintiffs and Class members are entitled to equitable relief including injunctive relief.

### iii. Typicality of Claims and Relief Sought

44. Plaintiffs have suffered the same violations and similar injuries as other Class members arising out of and caused by Defendants' common course of conduct. All Class members were subject to the same acts and omissions by Defendants, as alleged herein, resulting in the breach of personal information.

45. Plaintiffs possess and assert each of the claims on behalf of the proposed Classes. They seek similar relief as other Class members.

### iv. Adequacy of Representation

46. Plaintiffs' interests are coextensive with those of the members of the proposed Classes. Each suffered risk of loss and credit harm and identity theft caused by Equifax's wrongful conduct and negligent failure to safeguard their data, the injuries suffered by Plaintiffs and the Class members are identical, and Plaintiffs' claims for relief are based upon the same legal theories as are the claims of the other Class members. Plaintiffs are willing and able to represent the proposed Classes fairly and vigorously.

47.     Plaintiffs have retained counsel sufficiently qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity.

### v.     Efficiency of Class Prosecution of Class Claims

48.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly where individual class members lack the financial resources to vigorously prosecute a lawsuit against a large corporation such as Equifax.

49.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

50.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Classes, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

51.     The issues in this class action can be decided by means of common, classwide proof. In addition, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

### C.     Requirements of Rule 23(b)(2)

52.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the proposed Classes by failing to take necessary steps to safeguard Plaintiffs' and Class members' PII.

53. Defendants' systemic conduct justifies the requested injunctive and declaratory relief with respect to the Classes.

54. Injunctive, declaratory, and affirmative relief are predominant forms of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of Equifax's failure to safeguard consumers' PII. In turn, entitlement to declaratory, injunctive, and affirmative relief forms the factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by Equifax's failure to secure such information.

**D.    Rule 23(c)(4) Issue Certification**

55. Additionally, or in the alternative, the Court may grant "partial" or "issue" certification under Rule 23(c)(4). Resolution of common questions of fact and law would materially advance the litigation for all Class members.

## VI.    COUNTS

### COUNT I

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

### (On behalf of the Nationwide and Alaska Classes against all Defendants)

56. Plaintiffs incorporate paragraphs 1 through 55 by reference.

57. Plaintiffs and Class members are consumers entitled to the protections of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c) ("FCRA").

58. Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

CLASS ACTION COMPLAINT

59. Equifax is a consumer reporting agency under the FCRA because, for monetary fees, they regularly engage in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

60. As a consumer reporting agency, the FCRA requires Equifax to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a).

61. Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -- (A) credit . . . to be used primarily for personal, family, or household purposes; . . . or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1). The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

62. As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as

17

those who accessed the Class members' PII. Equifax violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

63.    Equifax furnished Class members' consumer reports by disclosing their consumer reports to unauthorized entities and computer hackers; allowing unauthorized entities and computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

64.    The Federal Trade Commission ("FTC") has pursued enforcement actions against consumer reporting agencies under the FCRA for failing to "take adequate measures to fulfill their obligations to protect information contained in consumer reports, as required by the" FCRA, in connection with data breaches.

65.    Equifax willfully and/or recklessly violated § 1681b and § 1681e(a) by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under § 1681b of the FCRA. The willful and reckless nature of Equifax's violations is supported by, among other things, Equifax's numerous other data breaches in the past. Further, Defendants tout themselves as industry leaders in breach prevention; thus, they were well aware of the importance of the measures organizations should take to prevent data breaches, and willingly failed to take them.

66.    Defendants also acted willfully and recklessly because they knew or should have known about their legal obligations regarding data security and data breaches under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Equifax obtained or had available these and

other substantial written materials that apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiffs and other members of the Classes of their rights under the FCRA.

67.     Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and the Class members' PII for no permissible purposes under the FCRA.

68.     Plaintiffs and the Class members have been damaged by Equifax's willful or reckless failure to comply with the FCRA. Therefore, Plaintiffs and each of the Class members are entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

69.     Plaintiffs and the Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2) & (3).

## COUNT II

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

### (On behalf of the Nationwide and Alaska Classes against all Defendants)

70.     Plaintiffs incorporate paragraphs 1 through 69 by reference.

71.     Equifax was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under § 1681b of the FCRA. Equifax's negligent failure to maintain reasonable procedures is supported by, among other things, Equifax's numerous other data breaches in the past. Further, as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

CLASS ACTION COMPLAINT

72. Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and Class members' PII and consumer reports for no permissible purposes under the FCRA.

73. Plaintiffs and the Class members have been damaged by Equifax's negligent failure to comply with the FCRA. Therefore, Plaintiffs and each of the Class members are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1).

74. Plaintiffs and the Class members are also entitled to recover their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

## COUNT III

## VIOLATION OF THE ALASKA PERSONAL INFORMATION PROTECTION ACT

### (On behalf of the Alaska Class against all Defendants)

75. Plaintiffs incorporate paragraphs 1 through 74 by reference.

76. The Alaska Personal Information Protection Act ("APIPA") requires that business "take all reasonable measures necessary to protect against unauthorized access to or use of the records" when disposing of records that contain personal information. Alaska Stat. Ann. § 45.48.500. Businesses must "adopt written policies and procedures that relate to the adequate destruction and proper disposal of records containing personal information [...] consistent with" this requirement. Alaska Stat. Ann. § 45.48.530.

77. "Covered persons" that own or license "personal information" on Alaska residents must notify those residents of a "breach of security of the information system" that

contains their information "in the most expeditious time possible and without unreasonable delay..." Alaska Stat. Ann. § 45.48.010(a-b).

78.     Similarly, any entity that receives and maintains "personal information" on Alaska residents must notify the owner or licensor of that information of a data breach "immediately..." Alaska Stat. Ann. § 45.48.070.

79.     APIPA also prohibits Defendants from requiring that consumers use their social security numbers to access an Internet website "unless a password, a unique personal identification number, or another authentication device is also required to access the website." Alaska Stat. Ann. § 45.48.400.

80.     Defendants are "covered persons" as defined by AS § 45.48.090(2)

81.     In the alternative, Defendants maintain personal information on Alaska residents.

82.     The Data Breach is a "breach of security" AS § 45.48.090(1).  As described herein, Equifax's inadequate data security measures resulted in hackers' unauthorized acquisition of Plaintiffs' and the Alaska Class members' PII.  This massive Data Breach has severely compromised the security, confidentiality, and integrity of Plaintiffs' and Class members' PII.

83.     Plaintiffs and the Alaska Class members' PII (including but not limited to names, addresses, and Social Security numbers) includes "personal information" as defined under AS § 45.48.090(7).

84.     Equifax failed to take all reasonable measures necessary to dispose of the personal information of Plaintiffs and Class members in a manner that prevented its use by unauthorized persons.  Instead of deleting or encrypting this information, Defendants maintained Plaintiffs' and Class members' personal information long after it was no longer needed, in a format and manner that made it accessible to unauthorized parties.

85.     Because Defendants were aware of a breach of their security system, they had an obligation to disclose the Data Breach in the most expeditious manner possible and, in the alternative, immediately upon learning of it.  Equifax failed to do so.  Instead, Defendants withheld all information regarding the breach for more than one month.  They still have not informed Plaintiffs and Alaska Class members what items of their information were taken.

86.     Defendants compounded this violation by requiring Plaintiffs and consumers to type the last 6 digits of their social security numbers into the website Defendants set up to provide information about the impacts of the breach.   No other password or means of authentication was used in conjunction.

87.     As a direct and proximate result Equifax's violations of APIPA, Plaintiffs and the Alaska Class members suffered the damages alleged herein.

88.     This claim is asserted in the alternative and to the extent that no exception to these provisions (e.g. Alaska Stat. Ann. §§ 45.48.040(c); 45.48.410(b)(3); 45.48.540(b)) applies.

### COUNT IV

### NEGLIGENCE

### (On Behalf of Nationwide and Alaska Classes against all Defendants)

89.     Plaintiffs incorporate paragraphs 1 through 88 by reference.

90.     Equifax owed a duty to Plaintiffs and Class members to exercise reasonable care in safeguarding their sensitive personal information.  This duty included, among other things, designing, maintaining, monitoring, and testing Equifax's security systems, protocols, and practices to ensure that Class members' information was adequately secured from unauthorized access.

91.     Equifax owed a duty to Class members to implement intrusion detection processes that would detect a data breach in a timely manner.

92.     Equifax also had a duty to delete any PII that was no longer needed to serve client needs.

93.     Equifax owed a duty to disclose the material fact that their data security practices were inadequate to safeguard Class members' PII.

94.     Equifax also had independent duties under federal and state laws that required Equifax to reasonably safeguard Plaintiffs' and Class members' PII and promptly notify them about the Data Breach.

95.     Equifax had a special relationship with Plaintiffs and Class members from being entrusted with their PII, which provided an independent duty of care. Moreover, Equifax had the ability to protect their systems and the PII they stored on them from attack.

96.     Equifax breached their duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Class members' PII; (b) failing to detect and end the Data Breach in a timely manner; (c) failing to disclose that Defendants' data security practices were inadequate to safeguard Class members' PII; and (d) failing to provide adequate and timely notice of the breach.

97.     But for Equifax's breach of their duties, Class members' PII would not have been accessed by unauthorized individuals.

98.     Plaintiffs and Class members were foreseeable victims of Equifax's inadequate data security practices. Equifax knew or should have known that a breach of their data security systems would cause damages to Class members.

99.     Equifax engaged in this misconduct recklessly, in conscious neglect of duty and in callous indifference to consequences, and, in the alternative, with such want of care as would raise a presumption of a conscious indifference to consequences. Equifax was or should reasonably have been, aware of their misconduct and of the foreseeable injury that would probably result, and with reckless indifference to consequences, consciously and intentionally committed the wrongful acts and omissions herein. Equifax's actions and omissions were, therefore, not just negligent, but grossly negligent, reckless, willful, and wanton.

100.    As a result of Equifax's negligence, Plaintiffs and Class members suffered and will continue to suffer injury, which includes but is not limited to the monetary difference between the amount paid for services as promised and the services actually provided by Defendants (which did not include adequate or industry standard data protection), inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class members must more closely monitor their financial accounts and credit histories to guard against identity theft. Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of the PII. Plaintiffs and the Classes have also experienced other damages consistent with the theft of their PII. Through their failure to timely discover and provide clear notification of the Data Breach to consumers, Equifax prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their PII.

101.    The damages to Plaintiffs and the Class members were a direct, proximate, reasonably foreseeable result of Equifax's breaches of their duties.

102. Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

## COUNT V

## NEGLIGENCE PER SE

**(On behalf of the Nationwide and Alaska Classes against all Defendants)**

103. Plaintiffs incorporate paragraphs 1 through 102 by reference.

104. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Equifax, of failing to use reasonable measures to protect PII.

105. Equifax violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Equifax's conduct was particularly unreasonable given the nature and amount of PII they obtained and stored, and the foreseeable consequences of a data breach at a corporation such as Equifax, including, specifically, the immense damages that would result to Plaintiffs and Class members.

106. Equifax's violation of Section 5 of the FTC Act constitutes negligence per se.

107. Equifax also violated the FCRA, as stated in Counts I and II. Equifax's violation of the FCRA constitutes negligence per se.

108. The Gramm-Leach-Bliley Act ("GLBA") requires covered entities to satisfy certain standards relating to administrative, technical, and physical safeguards:

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

15 U.S.C. § 6801(b).

109. Businesses subject to the GLBA "should take preventative measures to safeguard customer information against attempts to gain unauthorized access to the information." Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F.

110. In order to satisfy their obligations under the GLBA, Equifax was required to "develop, implement, and maintain a comprehensive information security program that is [1] written in one or more readily accessible parts and [2] contains administrative, technical, and physical safeguards that are appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." See 16 C.F.R. § 314.3; see also Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F. (Subject companies must "design its information security program to control the identified risks, commensurate with the sensitivity of the information as well as the complexity and scope of the [...] company's activities"). This obligation included considering and, where the Company determined appropriate, adopting mechanisms for "[e[ncryption of electronic customer information, including while in transit or in storage on networks or systems to which unauthorized individuals may have access." Id.

111. In addition, under the Interagency Guidelines Establishing Information Security Standards, 12 C.F.R. pt. 225, App. F., Equifax had an affirmative duty to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." See id. "The program should be

CLASS ACTION COMPLAINT

appropriate to the size and complexity of the institution and the nature and scope of its activities." Id.

112. Equifax had an "affirmative duty to protect their customers' information against unauthorized access or use." Id. Timely notification of customers in the event of a data breach is key to meeting this affirmative obligation. Accordingly, when Equifax became aware of "unauthorized access to sensitive customer information," they should have "conduct[ed] a reasonable investigation to promptly determine the likelihood that the information has been or will be misused" and "notif[ied] the affected customer[s] as soon as possible." See id. Sensitive customer information includes much of the PII released in the Data Breach.

113. Equifax violated the GLBA by failing to "develop, implement, and maintain a comprehensive information security program" with "administrative, technical, and physical safeguards" that were "appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." This includes, but is not limited to, (a) Equifax's failure to implement and maintain adequate data security practices to safeguard Class members' PII; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that Defendants' data security practices were inadequate to safeguard Class members' PII.

114. Equifax also violated the GLBA by failing to notify affected customers as soon as possible after they became aware of unauthorized access to sensitive customer information.

115. Equifax's violations of the GLBA constitute negligence per se.

116. Equifax also violated APIPA, including Alaska Stat. Ann. § 45.48.530, § 45.48.010(a-b), § 45.48.070 and § 45.48.400, as stated in Count III. Equifax's violations of APIPA constitute negligence per se.

117. Plaintiffs and Class members are within the class of persons that the FTC Act, the FCRA, and the GLBA were intended to protect.

118. Plaintiffs and the Alaska Class members are within the class of persons that the APIPA was intended to protect.

119. Plaintiffs and Class members were foreseeable victims of Equifax's violation of the FTC Act, the FCRA, and the GLBA. Plaintiffs and the Alaska Class members were foreseeable victims of Equifax's violation of APIPA.

120. Equifax knew or should have known that their failure to take reasonable measures to prevent a breach of their data security systems, to securely dispose of data no longer needed, to inform Plaintiffs and Class members of the inadequacy of their security measures, and to timely and adequately report the Data Breach to Class members would cause damage to Plaintiffs and Class members.

121. The harm that occurred as a result of the Equifax Data Breach is the type of harm the FTC Act, the FCRA, the GLBA, and APIPA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as suffered by Plaintiffs and the Classes.

122. Equifax engaged in this misconduct recklessly, in conscious neglect of duty and in callous indifference to consequences, and, in the alternative, with such want of care as would raise a presumption of a conscious indifference to consequences. Equifax was, or should reasonably have been, aware of their misconduct and of the foreseeable injury that would probably result, and with reckless indifference to consequences, consciously and intentionally

CLASS ACTION COMPLAINT
Case 3:17-cv-00208-SWS Document 1 Filed 09/29/17 Page 28 of 37

committed the wrongful acts and omissions herein. Equifax's actions and omissions were, therefore, not just negligent, but grossly negligent, reckless, willful, and wanton.

123. As a direct and proximate result of Equifax's negligence per se, Plaintiffs and Class members suffered and will continue to suffer injury, which includes but is not limited to the monetary difference between the amount paid for services as promised and the services actually provided by Defendants (which did not include adequate or industry standard data protection), inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class members must more closely monitor their financial accounts and credit histories to guard against identity theft. Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of the PII. Plaintiffs and the Classes have also experienced other damages consistent with the theft of their PII. Through their failure to timely discover and provide clear notification of the Data Breach to consumers, Equifax prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their PII.

124. But for Equifax's violation of the applicable laws and regulations, Class members' PII would not have been accessed by unauthorized individuals.

125. The damages to Plaintiffs and the Class members were a direct, proximate, reasonably foreseeable result of Equifax's breaches of the applicable laws and regulations.

126. Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

## COUNT VI

CLASS ACTION COMPLAINT

## BREACH OF IMPLIED CONTRACT

### (On behalf of the Nationwide and Alaska Classes against all Defendants)

127.    Plaintiffs incorporate paragraphs 1 through 126 by reference.

128.    As a necessary prerequisite to obtaining the services Equifax provides, Plaintiffs and the Class members provided PII to Defendants.

129.    Plaintiffs and the Class members also disclosed such information for the benefit of Defendants.

130.    The provision of PII by Plaintiffs and the Class members, and Defendants' acceptance of such information, created an implied contract whereby Defendants had a duty to safeguard and protect the information of Plaintiffs and Class members, consistent with industry standards for PII protection.

131.    Equifax did not safeguard or protect Plaintiffs' and the Classes' PII from being accessed, compromised, and/or stolen. Defendants did not maintain sufficient security measures and procedures to prevent unauthorized access to Plaintiffs' and the Classes' PII and did not provide timely notice of the Data Breach. Defendants did not comply with the industry standards for the protection of PII.

132.    Because Equifax failed to safeguard and/or protect Plaintiffs' and the Classes' PII from being compromised or stolen, and failed to comply with industry standards for the protection of such information, Defendants breached their implied contracts with Plaintiffs and Class members.

133.    Defendants' failure to fulfill their implied contractual obligation to protect PII resulted in Plaintiffs and the Class members receiving services of less value than what was

CLASS ACTION COMPLAINT

promised, i.e., services that included adequate protection of confidential patient data. Accordingly, Plaintiffs and the Class members did not receive the full benefit of their bargain.

134. As a result of Equifax's breach of its implied contract with Plaintiffs and Class members, Plaintiffs and Class members suffered and will continue to suffer injury, which includes but is not limited to the monetary difference between the amount paid for services as promised and the services actually provided by Defendants (which did not include adequate or industry standard data protection), inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class members must more closely monitor their financial accounts and credit histories to guard against identity theft. Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of the PII. Plaintiffs and the Classes have also experienced other damages consistent with the theft of their PII. Through its failure to timely discover and provide clear notification of the Data Breach to consumers, Equifax prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII.

## COUNT VII

### UNJUST ENRICHMENT

#### (On behalf of the Nationwide and Alaska Classes against all Defendants)

135. Plaintiffs incorporate paragraphs 1 through 134 by reference.

136. Equifax received payment to perform services that included protecting Plaintiffs' and the Class members' PII. Equifax failed to do this, but retained Plaintiffs' and the Class members' payments.

137. Equifax retained the benefit of said payments under circumstances which rendered it inequitable and unjust for them to retain such benefits without paying for their value.

138. Defendants' retention of this money is without justification because, had Plaintiffs and the Class members been aware of the truth of Defendants' misrepresentations and omissions regarding the security of their PII, they would not have utilized their services.

139. Defendants have knowledge of said benefits.

140. Plaintiffs and Class members are entitled to recover damages in an amount to be proven at trial.

## COUNT VIII

## BAILMENT

### (On behalf of the Nationwide and Alaska Classes against all Defendants)

141. Plaintiffs incorporate paragraphs 1 through 140 by reference.

142. Plaintiffs and Class members delivered their PII to Defendants in order to receive services from Defendants.

143. The PII was furnished Defendants for the exclusive purpose of receiving the services Equifax provides in the ordinary course of business, and Defendants took possession of the PII for the same reason.

144. Upon delivery, Plaintiffs and Class members intended and understood that Equifax would adequately safeguard their PII, and Defendants, in accepting possession, understood the expectations of Plaintiffs and Class members. Accordingly, bailment was

established for the mutual benefit of the parties at the time of delivery and acceptance of possession.

145. Pursuant to the bailment arrangement, Defendants owed Plaintiffs and Class members a duty of reasonable care in safeguarding and protecting their PII.

146. Equifax breached this duty by failing to take adequate steps to protect the PII entrusted to them and by failing to conform to best practices and industry standards to prevent unauthorized access to Plaintiffs' and Class members' PII.

147. As a result of Equifax's failure to fulfill its bailment arrangement, Plaintiffs and Class members suffered and will continue to suffer injury, which includes but is not limited to the monetary difference between the amount paid for services as promised and the services actually provided by Defendants (which did not include adequate or industry standard data protection), inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class members must more closely monitor their financial accounts and credit histories to guard against identity theft. Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class member's PII has also diminished the value of the PII. Plaintiffs and the Classes have also experienced other damages consistent with the theft of their PII. Through its failure to timely discover and provide clear notification of the Data Breach to consumers, Equifax prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their PII.

## COUNT IX

## DECLARATORY JUDGMENT

### (On behalf of the Nationwide and Alaska Classes against all Defendants)

33

148. Plaintiffs incorporate paragraphs 1 through 147 by reference.

149. As previously alleged, Plaintiffs and Class members entered into an implied contract that required Equifax to provide adequate security for the PII they collected. As previously alleged, Defendants owe duties of care to Plaintiffs and Class members that require them to adequately secure PII.

150. Equifax still possesses PII pertaining to Plaintiffs and Class members.

151. Equifax has made no announcement or notification that they have remedied the vulnerabilities in their computer data systems.

152. Accordingly, Equifax has not satisfied their obligations and legal duties to Plaintiffs and Class members. In fact, now that Equifax's lax approach towards data security has become public, the PII in their possession is more vulnerable than previously.

153. Actual harm has arisen in the wake of the Equifax Data Breach regarding Equifax's contractual obligations and duties of care to provide data security measures to Plaintiffs and Class members.

154. Plaintiffs, therefore, seek a declaration that (a) Equifax's existing data security measures do not comply with their contractual obligations and duties of care, and (b) in order to comply with their contractual obligations and duties of care, Equifax must implement and maintain reasonable security measures, including, but not limited to:

      a. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b. engaging third-party security auditors and internal personnel to run automated security monitoring;

c. auditing, testing, and training their security personnel regarding any new or modified procedures;

d. segmenting PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e. purging, deleting, and destroying in a reasonable secure manner PII not necessary for their provisions of services;

f. conducting regular database scanning and securing checks;

g. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h. educating their customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

## VII.  PRAYER FOR RELIEF ON INDIVIDUAL AND CLASS ACTION CLAIMS

WHEREFORE, the Plaintiffs and Class Representatives, on their own behalf and on behalf of the respective Classes, pray that this Court:

155.    Certify this case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed Classes; designate the proposed Class Representatives as representatives; and designate Plaintiffs' counsel of record as Class Counsel for each Class;

156.    Declare and adjudge that Defendants' policies, practices, and/or procedures challenged herein are illegal and in violation of the rights of the respective Plaintiffs, Class Representatives, and members of the Nationwide and Alaska Classes.

157.    Issue a permanent injunction against Defendants and their partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives, and any and all persons acting in concert with them from engaging in any conduct violating the rights of Plaintiffs, Class Representatives, members of the Nationwide and Alaska Classes, and those similarly situated as secured by law.

158.    Order injunctive relief requiring Defendants to (1) strengthen their data security systems that maintain PII to comply with the applicable state laws alleged herein and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendants' systems on a periodic basis; (3) promptly correct any problems or issues detected by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

159.    Award compensatory, consequential, incidental, and statutory damages, restitution, and disgorgement to Plaintiffs, Class Representatives, and members of the Classes, in an amount to be determined at trial.

160.    Order Defendants to make whole Plaintiffs, Class Representatives, and members of the Classes by providing them with any other monetary and affirmative relief;

161.    Order Defendants to pay all costs associated with Class notice and administration of Class-wide relief;

162.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to the Plaintiffs, Class Representatives, and members of the Nationwide and Alaska Classes;

163.     Award Plaintiffs, Class Representatives, and members of the Nationwide and Alaska Classes all pre-judgment interest and post-judgment interest available under law;

164.     Award Plaintiffs, Class Representatives, and members of the Nationwide and Alaska Classes any other appropriate equitable relief;

165.     Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law; and

166.     Award additional and further relief as this Court may deem just and proper.

DATED:  September 28, 2017

_____

Lee Holen
Ed Chapin (*Pro Hac Vice* forthcoming)
Kevin Sharp (*Pro Hac Vice* forthcoming)
Danielle Fuschetti (*Pro Hac Vice* forthcoming)

*Attorneys for Plaintiffs and the Classes*

GLASS ACTION COMPLAINT